IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EVONNA MATHIS,

    Plaintiff,

v.

CWA LOCAL UNION 4320, *et al.*,

    Defendants.

Case No.: 2:10-cv-1093
JUDGE SMITH
Magistrate Judge Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant Communication Workers of America Local Union No. 4320's ("CWA") Motion to Dismiss (Doc. 9).  For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED**.  The Court will address a number of other motions pending in this case in turn, including: Plaintiff's motion for default judgment (Doc. 14); Defendant's motion to strike Plaintiff's motions for default judgment (Docs. 21 and 39), Plaintiff's motion to order Defendants to serve all documents by certified mail (Doc. 24), and Plaintiff's motion to compel the court to have the Defendant's respond to the Complaint (Doc. 36).

### I. BACKGROUND

In December 2010, Plaintiff Evonna Mathis commenced this action against Defendant CWA, and six employees of CWA (collectively the "CWA Defendants"), for their alleged failure to adequately represent her in a grievance filed against AT&T.  In January 2011, Defendant CWA filed a motion to dismiss Plaintiff Mathis' claim pursuant to Rule 16(b)(6) of the Federal Rules of

Civil Procedure.  In March 2011, Plaintiff Mathis moved for default judgment against CWA based on her belief that CWA never responded to her original complaint.  Defendant CWA countered in April 2011, with a motion to strike Plaintiff Mathis' motion for default judgment.

This case arises out of Plaintiff Mathis' belief that her civil rights were violated by AT&T when they allegedly electronically tracked her computer and cell phone activity and physically followed her while she was in her home or traveling.  Plaintiff Mathis believes that AT&T's tracking, following, and harassing actions occurred because she is a black woman.  Based on these actions allegedly committed by AT&T, Plaintiff Mathis approached CWA, the local union that represents her interests, for representation.  The claims in the case at bar are based on Plaintiff Mathis' belief that the employees of CWA did not adequately represent her in her grievance against AT&T.

Plaintiff Mathis, a former employee of AT&T who paid her union dues to CWA, believes she was not represented according to the bargaining agreement between AT&T and CWA. Plaintiff Mathis contends that when she approached CWA with grievances against AT&T, she was given erroneous advice which were outright lies. (Pl.'s Compl., Doc. 3).  She also contends that CWA did not follow the "steps of grievances... correctly, accurately, or efficiently." *Id.*  For example, Plaintiff Mathis cites a grievance she filed in September 2010 that Defendant CWA, by December 2010, had not yet ruled on or commenced discovery. *Id.*  Additionally, Plaintiff Mathis asserts that she did not receive any documentation when AT&T disciplined her, and that CWA made no efforts to oppose that lack of documentation. *Id.*  Plaintiff Mathis alleges that CWA did not properly represent her, as evidenced by the complaints above, due to racial discrimination. *Id.*

Defendant CWA argues that Plaintiff Mathis only presents conclusory allegations and fails to allege any facts that support these allegations. (Doc. 9, 5-6). Therefore, the CWA Defendants move for dismissal of Plaintiff's claims against them based on Plaintiff's failure to state a claim upon which relief can be granted.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

Plaintiff Mathis is proceeding *pro se*, and accordingly, this Court must construe Plaintiff's allegations liberally and apply a less stringent standard to those pleadings than to a complaint drafted by counsel. *Burrell v. Henderson*, 483 F.Supp.2d 595, 599-600 (S.D. Ohio 2007). However, a court does not need to accept as true "legal conclusions or unwarranted factual inferences." *Id.* at 600.

Plaintiff Mathis argues that CWA, and six employees of CWA, has not adequately represented her per a bargaining agreement between AT&T and CWA, and therefore brings a claim based on "fair labor/management violations." This Court interprets Plaintiff Mathis' claims as arising under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §

4

185 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §2000e.  Plaintiff Mathis is seeking compensation for the loss of her employment with AT&T based on CWA's alleged failure of representation.

The CWA Defendants argue that Plaintiff's Complaint against the employees of CWA must be dismissed because the LMRA does not provide a cause of action against individuals working for a union.  Therefore, Plaintiff Mathis has not stated a claim for which relief can be granted against the employees of CWA.  Regarding CWA itself, Defendant CWA argues that Plaintiff Mathis has not stated a claim for which relief can be granted because her complaint only alleges negligence or poor judgement, both of which are insufficient to state a claim for a breach of the duty of fair representation under the LMRA.  Additionally, CWA argues that Plaintiff Mathis' claim of racial bias does not allege any specific facts and is a conclusory allegation.  Therefore, CWA contends that Plaintiff Mathis' claim against CWA should be dismissed.  The court will address these claims in turn.

**A.      Plaintiff's Claims Under the LMRA**

Plaintiff Mathis has raised two claims under the LMRA.  The first claim alleges a breach of the duty of fair representation against individual employees of CWA.  The second alleges a breach of the duty of fair representation against CWA in its capacity as a union.

**1.      Plaintiff's Claims Against Individual Defendants Under the LMRA**

Plaintiff Mathis' first cause of action is against six employees of CWA in their individual capacity for an alleged breach of the duty of fair representation.  This cause of action is governed by Section 301 of the LMRA, 29 U.S.C.A. §185. Section 301(b) of the LMRA states:

> Any labor organization which represents employees in an industry

5

> affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"It is well-settled case law that officers of labor unions cannot be held liable under § 301 of the LMRA in their individual capacity." *Burrell,* 483 F.Supp.2d at 599. In other words, § 301 only provides for actions against a union and not individuals working on behalf of the union. *Id.* Therefore, insofar as Plaintiff's claims are against the six employees of CWA in their individual capacity, Plaintiff has failed to state a claim under §301 of the LMRA.

Therefore, Plaintiff's LMRA claims against the six employees of CWA in their individual capacity are hereby **DISMISSED**.

    **2.**    **Plaintiff's Claims Against CWA Under the LMRA**

In order for a plaintiff to survive a motion to dismiss for a breach of the duty of fair representation, the plaintiff must show that the "union's conduct towards a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372 (1990). The Sixth Circuit has stated that "[e]ach of these wrongs is mutually independent, meaning, that the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (internal quotations omitted). In summarizing the duties of a union, the Supreme Court of the United States stated:

> It is now well established that, as the exclusive bargaining

6

> representative of the employees, ... the Union [has] a statutory duty fairly to represent all of those employees, both in its collective bargaining ... and in its enforcement of the resulting collective bargaining agreement. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. This duty of fair representation is of major importance, but a breach occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

*United Steelworkers of Am.*, 495 U.S. at 372.

The Sixth Circuit has held that "the duty of fair representation is implicated only when an individual or group is treated differently by a union-either through discrimination, bad faith or arbitrary conduct-than another individual, group, or collective." *Chapman v. United Steelworkers of Am., Int'l Union*, 861 F.2d 719 (table), 1988 WL 118043 (6th Cir. 1988).  Specifically regarding discrimination, a plaintiff's claim of a breach of the duty of fair representation will survive a motion to dismiss only if the alleged discrimination is "intentional, severe, and unrelated to legitimate union objectives." *Trail v. Int'l Bhd.. of Teamsters, Chauffeurs Warehouseman and Helpers of Am.*, 542 F.2d 961, 968 (6th Cir. 1976).  Racial discrimination is not a legitimate union objective.

However, without additional information, alleging that a union did not sufficiently pursue a grievance is "legally insufficient to support a claim for breach of the duty of fair representation." *Dobrski v. Ford Motor Co.* 698 F.Supp.2d 966, 991 (N.D. Ohio 2010).  While a union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," an employee does not have an absolute right to have his grievance taken to arbitration. *Dobrski*, 698 F.Supp.2d

at 991 (*citing Vaca v. Sipes*, 386 U.S. 171, 191 (1967)).

In the case at bar, Plaintiff Mathis alleges that Defendant CWA has given her "erroneous advice – lies." (Doc. 1, 6). Plaintiff Mathis also alleges that CWA intentionally failed to pursue her complaint against AT&T due to racial discrimination. (Doc. 1, 6). However, the above statements by Plaintiff Mathis are conclusory allegations and are insufficient under the heightened pleading standards from *Twombly/Iqbal*.

Plaintiff Mathis more specifically alleges that CWA took no action by December 2010 on a grievance she filed in September of 2010, and that the delay was unwarranted. However, this allegation does not suggest that Defendant CWA breached its duty of fair representation by engaging in actions that are arbitrary, discriminatory, or in bad faith. There are numerous reasons why a union may decide not to move forward with a grievance for a period of three months. Additionally, based on *Dobrsk*, simply alleging that a union did not sufficiently pursue a grievance, without more, is "legally insufficient to support a claim for breach of the duty of fair representation." 698 F.Supp.2d at 991.

Plaintiff Mathis also claims that CWA did not require any documentation from AT&T when it disciplined her. Similar to Plaintiff Mathis' allegation regarding the timeliness of CWA's actions regarding her grievance, this allegation does not present evidence that CWA's actions are arbitrary, discriminatory, or in bad faith. Additionally, as required by *Chapman*, Plaintiff Mathis has failed to allege facts that would show Defendant CWA treated her differently than an individual from another group based on a discriminatory, arbitrary, or bad faith motive. Therefore, Plaintiff Mathis' claims are insufficient under *Dobrsk* and *Chapman*. Accordingly, Plaintiff's claims against Defendant CWA are hereby dismissed without prejudice.

8

**B.     The Plaintiff's Claims Based on Title VII of the Civil Rights Act of 1964**

The Court interprets Plaintiff Mathis' claims against the six employees of CWA to include a discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 42 U.S.C.A. §2000e. Plaintiff alleges that CWA discriminated against her by failing to adequately represent her based on her race. Title VII makes it unlawful for a labor organization "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin[.]" 42 U.S.C. 2000e-2(c).

The Sixth Circuit, following a majority of other courts, has held that Congress "did not intend individual employees to he held liable under the definition of 'employer' under Title VII." *Burrell,* 483 F.Supp.2d at 600. Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen employees or more employees or . . . any agent of such person." 42 U.S.C. 2000e(b). The majority of courts addressing the individual liability issue have concluded that "the obvious purpose of the agent provision was to incorporate respondeat superior liability into the statute." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). The Court also noted that the purpose of limiting liability under Title VII to employers with greater than fifteen employees was because "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Id.* at 406. "It is inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." *Id.* The legislative history of Title VII indicates that agent liability was not discussed during Senate floor debates, "implying that Congress did not contemplate agent liability under Title VII." *Id.* Additionally, a successful Title VII plaintiff is limited to reinstatement and back pay, remedies that are only available from an employer. *Id.* As

9

the statute contains no provision for damages to be paid by individuals, this is further evidence of a lack of Congressional intent to hold individuals liable. *Id.*

While it is clear that an employee cannot be held liable under Title VII, that same determination did not originally apply to union officials. However, the Sixth Circuit later held that "individual union officials cannot be held liable under Title VII[.]" *Creusere v. Southwest Ohio Reg'l Council of Carpenters*, No. C-1-01-0021, 2002 U.S. Dist. LEXIS 5217, at *12 (S.D. Ohio Mar. 28, 2002). This decision is based in part on Congressional intent to not hold individual employees liable under Title VII as discussed above. *Id.* at *14. Additionally, Title VII's definition of a "labor organization" includes an agent provision identical to the agent provision included in the definition of an employer. *Id.* at *15. "The court can find no reason why the labor organization agent provision should be interpreted differently that the employer agent provision." *Id.* "Therefore, . . . the Court concludes that the purpose of the agent provision in the labor organization definition is to incorporate respondeat superior liability into the statutes, rather than to impose agent liability on union officials." *Id.* Therefore, based the identical agent provision for labor organizations and employment organizations and evidence of Congressional intent not to hold an individual liable under Title VII, a union official is not liable in his individual capacity for discrimination under a Title VII claim.

Therefore, Plaintiff Mathis' Title VII claim against the six employees of CWA is hereby **DISMISSED**.

C.  **Default Judgment and Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 55, a default judgement must be entered if a party has "failed to plead or otherwise defend" a case and that failure is shown by "affidavit or

otherwise." In the case at bar, Plaintiff Mathis filed her original complaint on December 14, 2010 and CWA responded with a motion to dismiss on January 18, 2011. CWA's motion to dismiss is a sufficient act showing an intent to defend the case, and therefore the requirements of Rule 55(a) of the Federal Rules of Civil Procedure are not met. Plaintiff Mathis' motions for default judgment are **DENIED**. Similarly, Plaintiff has moved to compel Defendants to respond to her Complaint. Defendants have responded in the form of a Motion to Dismiss. Accordingly, Plaintiff's Motion to Compel is **DENIED**.

Based on the Court's decision to deny Plaintiff Mathis' motions for default judgment, CWA's motion to strike is **MOOT**.

**D.     Motion to Serve Court's Documents by Certified Mail**

In the Sixth Circuit, when a plaintiff's privacy is at stake, there is precedent requiring a defendant to send documentation to the plaintiff via certified mail, instead of regular first-class U.S. mail. For example, in *Aslani v. Sparrow Health Systems*, the court held that the plaintiff's health records should be returned via certified mail because the cost of certified mail, when viewed in the context of the cost of the entire litigation, is reasonable when compared to the plaintiff's interest in maintaining the privacy of her medical history. No. 1:08-cv-298, 2010 WL 623673, at *7 (W.D. Mich. 2010).

This Court concludes that employment information, while usually not as sensitive as medical records, may contain information a plaintiff wishes to keep private. In the case at bar, the increased costs of sending documentation to Plaintiff Mathis via certified mail is relatively insubstantial when viewed in light of the total cost of litigation. Therefore, this Court would normally grant Plaintiff Mathis' motion requiring the Defendant CWA to send future

11

communications via certified mail. However, because the CWA Defendant's motion to dismiss is granted, Plaintiff Mathis' motion "to Service all Court Pleadings, Documents and Orders (Motions) by Certified Mail" is now **MOOT**.

## IV. CONCLUSION

Based on the foregoing, the CWA Defendant's motion to dismiss (Doc. 9) Plaintiff Mathis' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**. Additionally, Plaintiff Mathis' motions for a default judgment (Doc. 14 and 39) and motion to compel (Doc. 36) are **DENIED**. Defendants' motion to strike Plaintiff Mathis' motion for default judgment (Doc. 21) is **MOOT**. Finally, because the CWA Defendant's motion to dismiss is granted, Plaintiff Mathis' motion to have all court pleadings sent to her by certified mail (Doc. 24) is **MOOT**.

The Clerk of Courts is ordered to removed Documents 9, 14, 21, 24, 36, and 39 from the Court's pending motions list.

The Clerk is further instructed to remove this case from the Court's pending cases list. This action is dismissed without prejudice.

**IT IS SO ORDERED**.

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**